JAMES W. MOORE, ET AL. *v.* LEWELLN BUSH'S HEIRS.

[Abstract Kentucky Law Reporter, Vol. 6—670.]

**Suit for Purchase Money of Land.**

Where the purchaser of land resists a suit by the grantor to subject the land for the balance of purchase-money notes, on the grounds that the grantor failed to convey a good title or to put him in possession of all the land, the grantor is not bound to establish a clear title back to the government where it is shown that such purchaser has had possession of such land for more than twenty-five years claiming to the extent of the boundary.

APPEAL FROM BREATHITT CIRCUIT COURT.

March 14, 1885.

OPINION BY JUDGE LEWIS:

This action was commenced in 1855 by Lewelln Bush, deceased, to subject land to the satisfaction of two notes for $800 each executed February 17, 1853, by J. W. Moore and others, being for the second and third instalments of the purchase money, the first having been paid.

Judgment enforcing the lien was resisted by the vendees and a rescission of the contract of sale asked upon the ground first that the vendor had no valid title to any part of the land, sold, and second that a large portion of it, was at the time of the sale, owned and in the possession of others, which the vendor had not, nor was able as he contracted to do, to put the vendees in possession of.

On the 4th of October, 1853, Lewelln Bush commenced an action in the same court to recover of Sparks & Spencer a portion of the land included in the boundary sold to Moore and others. These two actions were continued on the dockets until June, 1878, when by an order then made they were consolidated and tried together, and judgment rendered in each.

By the judgment the petition of the plaintiffs, being then the widow and heirs at law of Lewelln Bush, deceased, against Sparks

and others was dismissed at the cost of the plaintiff. But in the first a named action judgment was rendered in favor of the plaintiff, Martha Bush, administratrix of Lewelln Bush, deceased, against Moore and others for the amount of the two notes mentioned and interest, subject to a credit of $500, and for the enforcement of the lien to satisfy it upon a tract of land described as follows: Beginning at a corner of Grisby and Elkins, a spruce pine at the Smokey Fork of Devil's creek, thence down that stream to the Pigeon Roost Fork of Devil's creek; thence up Pigeon Roost Fork to the Spruce Gap, thence across the ridge to the middle fork of Red river; thence down the middle fork of Red river to the mouth of Graining Block Fork of Red river, thence up said fork (not to interfere with sugar trees in bottom land) to the mouth of Hotel Cave branch; thence up said branch and across the ridge to the beginning.

But by the terms of the judgment there is excepted out of the boundary described a tract of land known as the Zodac Ponders tract, containing 187 acres, also excluding so much land as James Sparks and Ben F. Spencer are in the actual adverse possession of on the 17th day of February, 1853. It was further provided in the judgment that as the boundary of the land last mentioned was not described by the pleadings and proof so as to enable the court to define it by metes and bounds, a commissioner was appointed to go upon the land and survey and define the boundary, and for that purpose was authorized to hear proof.

It was further adjudged that as in the opinion of the court there were more than 2,400 acres embraced in the boundary sold by Lewelln Bush to Moore and others after deducting the portions excepted, the question of fixing the whole amount that defendants are bound for should be reserved for future adjudication, and that the court will hereafter fix the number of acres that the defendants got of the land and the amount of money that they shall pay for the same that is in excess of 2,400 acres.

Lewelln Bush never made a deed to his vendees for the land he sought to subject, nor is the title bond he gave to them now in existence, it having been lost out of the papers of this action.

But we are satisfied from the pleadings and evidence in the case that the boundary set out in the judgment except as hereafter to be mentioned, correctly describes the land sold by Bush to

Moore and others in 1853. We are also satisfied from the manner in which the two notes are drawn, in regard to the terms and conditions of the sale. And they know that all the land within the boundary understood and agreed upon by the parties, which Bush might put them in lawful possession of was sold at one dollar per acre, and that the quantity was then estimated at 2,400 acres, and the three notes for $800 each were then executed. But if it turns out that there was more or less 2,400 acres, the vendees are accordingly bound to pay $2,400 more or less, as the case might be. I do not feel authorized to say appellants have not good title to the land under their purchase from Bush, for they had, at the date of the judgment, been in the actual adverse and continual possession for more than twenty-five years claiming to the extent of the boundary, and Bush had possession for some time previously. It was not therefore incumbent on him and his representative and heirs after his death to show a connected title to the Commonwealth in order to enforce the lien for the purchase money.

We are also satisfied from the evidence that there is at least 2,400 acres within the boundary sold in 1853, exclusive of the Ponder tract, and the land Bush attempted to recover of Sparks & Spencer for a survey was made of the land under order of court in 1858 and the surveyor then reported there were 2,400 acres within the boundary sold not in dispute.

The land claimed by Sparks & Spencer or rather by their landlord, Hanks, who was made a defendant to the action instituted by Bush is the dividing line between the original surveys of Young and Thompson which has been run and fixed by the surveys and evidence in these cases. It could not have been understood by the parties in 1853 that the failure of Bush to put the vendees in possession of the land claimed by Hanks was to operate as a rescission of the contract, for there is of this land 1,680 acres, while the parties estimated and the notes were given for 2,400 acres, instead of 4,280, which is the entire quantity in the boundary sold. But the court erred in adjudging that appellants should be compelled to accept and pay for whatever quantity of land may be hereafter ascertained as being in the Thompson side of the original dividing line, not in the actual possession of Sparks & Spencer in 1853. For appellants should not be compelled to take or pay for any land that their vendee has not the ability at the date of the judgment

to give them a good title and the possession of. In this case and in the same judgment the petition filed by the vendee to recover of Hanks the land mentioned was dismissed. And clearly Bush's heirs are not now able to either make a good title or give the possession of that land to the appellants.

In the description of the land contained in the deeds relied on by appellees there is contained the following reservation: "Not to go over the cliffs to interfere with any land or sugar trees on Red river." But in the judgment rendered in this case the reservation is as follows: "But not to interfere with sugar trees in the bottom land." There is a material difference in the meaning of the language as used in the deeds and in the judgment, and the court erred in directing any land sold not described in the deeds.

As there is in our opinion as much as 2,400 acres of land in the boundary sold, excepting the Ponders land and the land claimed by Hanks inside the Thompson survey, the court properly rendered judgment for the balance of the two notes and interest and for the enforcement of the lien. But for the errors indicated the judgments rendered at the first term and also at the December term, 1878, must be *reversed* and cause remanded for further proceedings, consistent with this opinion.

Judgment *reversed.*

*W. L. Hurst, for appellants.*

*S. F. J. Trabue, for appellee.*